S. J. SLIGH & COMPANY, Appellants, v. KUEHNE
COMMISSION COMPANY, Respondent.

**Kansas City Court of Appeals, February 1, 1909.**

1. **SALES: Evidence: Correspondence.** Letters and telegrams
relating to the alleged sale of a carload of tomatoes are ex-
amined and held to establish the finding of the trial court
that there was no sale.

2. ——: ——: **"Understanding."** Where the trial court
after excluding certain evidence practically admits the same
matter there is no harm done, especially in this case where
the evidence of a prior "understanding" is precluded by the
correspondence of the parties.

Appeal from Jackson Circuit Court.—*Hon. Henry L.
McCune*, Judge.

AFFIRMED.

*Karnes, New & Krauthoff* and *John N. Davis* for
appellants.

(1)   The trial court erred in its conclusion that
there was no contract between the parties either ex-
pressed or implied, and further erred in refusing the
findings of law and fact asked by appellants.   24 Am.
& Eng. Ency. Law (2 Ed.), 1090; Hobbs v. Whip
Co., 158 Mass. 194, 33 N. E. 495.   (2) By agreement
of parties there had been a long and continuous course
of dealing.   This was understood by both.   If the testi-
mony of appellants, which was stricken out, had been
admitted, it would have shown what the agreement
was.   The inquiry of the telegram sent by the respond-
ent on May 2, 1906, simply brought into effect the pro-
visions of the agreement.   The appellants under the
circumstances then became at once the agent of re-
spondent to buy these "fancy" goods.   Acting on this

the goods were bought and shipped, which was *ipso facto* a delivery. The appellants now sue for goods sold and delivered.

*Henry C. Solomon,* for respondent, filed argument.

ELLISON, J.—Plaintiffs claim to have sold to defendant a carload of tomatoes at its request, and payment therefor being refused, this action for the price resulted. The judgment in the trial court was for the defendant.

Plaintiffs compose a partnership doing business in Jacksonville, Florida, as dealers in fruits and vegetables. Defendant is a commission company in Kansas City, Missouri, engaged in the same business. The two had had many business dealings in several years, but the beginning of the transaction resulting in the present controversy was on May 2, 1906, when defendant sent to plaintiffs the following telegram: "Quote tomatoes." On the same day plaintiff answered by the following telegram: "S. A. L. 18304, Fancy 562, choice 38, cost $2.50. Will guarantee stock. Shipments light." This meant that a car, number 18304 of the Seaboard Air Line Railway contained six hundred crates of tomatoes at the price stated; but did not say it had been shipped to defendant. On the next day plaintiffs wrote defendant enclosing bill of lading for the car of tomatoes. This letter was received by defendant on May 7th, and stated that "While your market may not justify the price, still we feel sure that it will by the time the goods arrive, and we have taken the responsibility of buying this car and diverting the same to you. We had no time to wire and get your reply. If it is not satisfactory we will make it so and will draw on you for actual cost." They did draw on defendant as stated.

On May 9th, defendant telegraphed to plaintiffs as follows: "Car tomatoes just arrived. Cannot ad-

vance $2.50. Handle your account." Thereupon plaintiffs answered by telegraph: "Should have wired us sooner. Could have sold. Handle if possible. Shipments lighter this week." Several weeks thereafter, viz. June 26th, plaintiffs telegraphed defendant as follows: "Bank reports draft S. A. L. 18304, not paid. Shipped May 3rd. Please honor. Must have money. Advise quick." To this defendant answered by mail, stating that it had put the tomatoes in cold storage and that when they commenced to take them out they found the "storage people" had chilled them, rendering them practically worthless, "and this is the reason we have not remitted for the car before this. We made claim against the storage people for our loss, and expected to have a settlement every day or we would have remitted what we realized out of the car, as we stated before, long ere this. They finally declined the claim and we have brought suit against them for the loss. If we win out, which no doubt we will, we will remit to you promptly." To this plaintiffs replied by mail, expressing great surprise, and not acquiescing in the view that defendant had not bought the tomatoes. It seems that suit had not been brought against the storage company, but the claim was placed in the hands of a lawyer and then authority sought from plaintiff to bring the suit. This was never given. Afterwards defendant disposed of the tomatoes on the market, at $836, which, after deducting storage $50.10, freight $365.88 and commission $50.16, left a net balance due plaintiffs of $360.86, which was remitted to them.

It will be seen that plaintiffs claim a sale of the tomatoes to defendant outright; while defendant claims there was no sale and that it handled them on commission, as plaintiffs' agent. We agree with the trial court in finding the facts established were with the defendant.

The introduction of the transaction did not intimate a purchase. It was a mere inquiry for the price

on tomatoes. This was answered by stating the price
on a certain carload. Defendant knew nothing further
until plaintiffs' letter arrived on the 7th by which it
appears that they recognized the fact that an order had
not been made by defendant, for they state that they
"have taken the responsibility of buying the car and
diverting the same to you," and that "if it is not satis-
factory we will make it so." When the tomatoes ar-
rived in Kansas City defendant immediately telegraph-
ed that it "cannot advance $2.50"; that is, could not
purchase them, but would handle them on plaintiffs'
account; that is, would handle them for plaintiffs. The
latter immediately answered, complaining that defend-
ant had not refused to purchase sooner, but stating
to defendant to "Handle if possible." We cannot in-
terpret this telegram to mean anything less than an
acquiescence in defendant's offer to handle the toma-
toes for plaintiffs.

Some complaint is made that the trial court exclud-
ed evidence of what "understanding" existed generally
between the parties in reference to purchases of fruits
or vegetables. There was no harm done by the ruling.
Practically the same matter was afterwards admitted.
Besides, in this case the correspondence as to this par-
ticular transaction leaves no room for inference to be
drawn from general understandings. The correspond-
ence shows a mere inquiry for price of tomatoes, and
that there could not have been an understanding that
such inquiry authorized plaintiffs to ship a carload
plainly appears by their first letter, in which there is,
in effect, an apology for shipping them on their own
responsibility and offering to make the matter right if
it was not satisfactory, and conceding that the Kansas
City market might not justify the price, but that they
"felt sure it would by the time the goods arrived." To
allow plaintiffs to recover would permit one to force on

another, as a purchase, property which he never order-ed and which he had never intimated a desire to buy. We consider authorities cited by plaintiffs as not appli-cable to the facts. The judgment is the only one which could have been rendered, and it is accordingly affirmed. All concur.